IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| ANDREW JAMES FULLER and CARL ANDERSON, | 3:10-CV-1420-BR |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CITY OF MCMINNVILLE; JONATHAN SUMMERS, individually; WILLIAM CHRISTENSEN, individually; and RON NOBLE, individually and in his official capacity as Chief of Police, | |
| Defendants. | |


LEONARD RANDOLPH BERMAN
Law Offices of Leonard R. Berman
4711 S.W. Huber Street, Suite E-3
Portland, OR 97219
(503) 473-8787

        Attorneys for Plaintiffs


1  -  OPINION AND ORDER

**STEVEN A. KRAEMER**
**LESLIE ANNE EDENHOFER**
Hart Wagner, LLP
1000 S.W. Broadway, 20th Floor
Portland, OR 97205
(503) 222-4499

      Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#29) for Summary Judgment.  For the reasons that follow, the
Court **GRANTS** Defendants' Motion for Summary Judgment and
**dismisses** this matter in its entirety.


<u>**BACKGROUND**</u>

    On November 11, 2010, Plaintiffs filed their original
Complaint on behalf of themselves and a class of those similarly
situated alleging they were unlawfully arrested for drunk driving
as a part of a pattern and practice of the City of McMinnville
and its police department to detain, charge, and arrest suspected
drunk drivers without legal justification.

    On March 10, 2011, Plaintiffs filed their Amended Complaint.

    On March 24, 2011, Defendants moved to dismiss the Amended
Complaint or, in the alternative, to deny class certification.
At a hearing on July 15, 2011, the Court granted the Motion to
Dismiss as set out on the record but permitted Plaintiffs to

2  -  OPINION AND ORDER

replead.

Plaintiffs filed their Second Amended Complaint on July 29, 2011, in which Plaintiffs each assert three claims: (1) violation of their Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against the respective arresting officers individually and against the City of McMinnville and Police Chief Noble in his individual and official capacities pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (2) common-law unlawful arrest against the City of McMinnville; and (3) common-law negligence against the City of McMinnville. Plaintiffs did not repeat their class-based allegations in their Second Amended Complaint and confirmed at the hearing on December 15, 2011, that they had withdrawn all class-based claims without prejudice.

On May 24, 2012, Defendants filed their Motion for Summary Judgment as to each of Plaintiffs' claims.  At oral argument on May 21, 2012, Plaintiffs conceded their *Monell* claims against the City of McMinnville and against Chief Noble.


## **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material

3  -  OPINION AND ORDER

fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party. *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145,

1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## <u>DEFENDANTS' MOTION (#29) FOR SUMMARY JUDGMENT</u>

Defendants move for summary judgment as to each of Plaintiffs' claims and, accordingly, request the Court to dismiss Plaintiffs' Second Amended Complaint in its entirety.

**I.    Evidentiary Issues.**

In their Reply Defendants object to Plaintiffs' Exhibit 1, a DVD of Officer Christensen's deposition testimony submitted in opposition to Defendants' Motion for Summary Judgment, on the grounds that:  (1) Plaintiffs did not authenticate the DVD, (2) Plaintiffs did not provide Defendants with a copy of the DVD, and (3) Plaintiffs did not properly authenticate the deposition testimony.

At the hearing on May 21, 2012, the Court heard argument on Defendants' objections to Plaintiffs' Exhibit 1 and denied Defendants' objections as moot for the reasons stated on the record at the hearing.

Defendants also object to Plaintiffs' Exhibit 4, a letter

5  -  OPINION AND ORDER

from Plaintiff Fuller's former criminal defense counsel to the
McMinnville District Attorney, and Plaintiffs' Exhibit 5, the
criminal defense counsel's draft motion to suppress, on the
grounds that these Exhibits are not admissible evidence and are
not based on any justiciable facts (*i.e.*, these Exhibits are
essentially Fuller's former criminal counsel's argument).  At
the hearing on May 21, 2012, the Court sustained Defendants'
objections to Exhibits 4 and 5, but the Court permitted
Plaintiffs' counsel to make the same or similar legal arguments
as posed in Exhibits 4 and 5.

## II.  Plaintiffs' 42 U.S.C. § 1983 Claims.

As noted, Plaintiffs confirmed at oral argument on May 21,
2012, that they concede Defendants' Motion as to the *Monell*
claims against the City of McMinnville and Chief Noble, and,
therefore, the Motion is granted to that extent.

With respect to the balance of their Motion, Defendants
assert the parties' Joint Statement of Agreed Facts does not
leave any triable issues for a jury to resolve and, based on
those Agreed Fats, Defendants contend Plaintiffs' remaining
§ 1983 claims for unlawful arrest in violation of their Fourth
Amendment rights should be resolved against Plaintiffs as a
matter of law.

### A.  Standards.

Under the Fourth Amendment "[t]he right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)(citations omitted).

An officer may stop a citizen if there is reasonable suspicion that he has committed or will commit a crime. *Terry v. Ohio*, 392 U.S. 1 (1968).  "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)).  Reasonable suspicion requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  A court must consider the totality of the circumstances when determining whether reasonable suspicion existed. *United States v. Osborn,* 203 F.3d 1176, 1181 (9th Cir. 2000).

A warrantless arrest is lawful only if there is "probable cause to believe that the arrestee has committed, or is committing, an offense." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 n.7 (9th Cir. 2008).  A police officer has probable

cause to arrest a person without a warrant if, under, the
totality of the circumstances known to arresting officers, there
exists a "fair probability" that the person has committed a
crime. *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012).
*See also Tatum v. City and County of San Francisco*, 441 F.3d
1090, 1094 (9th Cir. 2006).

In *Morgan v. Woessner* the Ninth Circuit noted "stops" of
individuals fall into three categories under the Fourth
Amendment:

> First, police may stop a citizen for questioning
> at any time, so long as that citizen recognizes
> that he or she is free to leave. Such brief,
> "consensual" exchanges need not be supported by
> any suspicion that the citizen is engaged in
> wrongdoing, and such stops are not considered
> seizures. Second, the police may "seize" citizens
> for brief, investigatory stops. This class of
> stops is not consensual, and such stops must be
> supported by "reasonable suspicion." Finally,
> police stops may be full-scale arrests. These
> stops, of course, are seizures, and must be
> supported by probable cause.

997 F.2d 1244, 1252 (9th Cir. 1993)(citations omitted). Oregon
law reflects these standards:

> Article I, section 9, of the Oregon
> Constitution establishes a right of the
> people "to be secure in their persons,
> houses, papers, and effects, against
> unreasonable search, or seizure." Among the
> potentially "infinite variety of encounters
> between law enforcement officers and
> citizens," *Holmes*, 311 Or. at 406, 813 P.2d
> 28, this court has identified three general
> categories of encounters and described
> whether or when those encounters implicate
> the protections afforded to individuals under

8  -  OPINION AND ORDER

> Article I, section 9. *Id*. at 406-07, 813
> P.2d 28. First, "mere conversation" or a
> "noncoercive encounter" between an officer
> and a citizen that involves no restraint of
> liberty requires no justification and does
> not implicate the liberty protections
> provided in Article I, section 9. Second, a
> temporary restraint of a person's liberty for
> the purpose of criminal investigation— *i.e.*,
> a "stop"—qualifies as a "seizure," under
> Article I, section 9, and must be justified
> by a reasonable suspicion of criminal
> activity. Third, an arrest also is a
> "seizure," under Article I, section 9, and
> that degree of restraint must be justified by
> probable cause to believe that the person
> arrested has committed a crime. *Id*. at 407,
> 813 P.2d 28.

State of Oregon v. Rodgers, 347 Or. 610, 621 (2010).

**B.    Facts.**

The following facts are taken from the parties' Joint
Statement of Agreed Facts. The observations made by the officers
that are set out below have been agreed to by the parties and are
undisputed unless otherwise noted.

**1.    Anderson's Arrest.**

On November 21, 2008, at approximately 7:36 p.m.,
police received a 911 report during which the caller stated that
"an older white Ford vehicle, license plate number 052QWE, was
swerving into oncoming traffic as it headed southbound on Highway
47 from Carlton." Deputy Russell Meade of the Yamhill County
Sheriff's office responded to the dispatch 911 call about a
possible intoxicated driver, spotted the described vehicle, and
"observed the described vehicle swerve about a foot over the

9  —  OPINION AND ORDER

center dividing line as it crossed a bridge near the north end of McMinnville." Deputy Meade also "observed the described vehicle swerve to the right side of the road toward the fog line and then swerve back over the center lane again about a foot."

Deputy Meade initiated a traffic stop on the described vehicle, which was driven by Anderson, and asked Anderson to provide his license, registration, and proof of insurance. Deputy Meade observed Anderson "had difficulty finding his driver's license," and he "passed over [it] twice" while searching. Deputy Meade also observed "Anderson's eyes were bloodshot and glassy," his "speech was slurred," and "detected an odor of alcohol coming from inside Mr. Anderson's vehicle." Anderson told Deputy Meade that he had consumed three beers with dinner prior to being stopped by Deputy Meade. Anderson does not know whether his eyes were bloodshot when Deputy Meade pulled him over.

Officer Jonathan Summers also responded to the 911 call involving Anderson, and he also "detected the odor of alcohol coming from either Mr. Anderson or Mr. Anderson's vehicle" and heard Anderson admit to consuming three beers with dinner. "Anderson agrees that the odor of alcohol from him was due to the alcohol he had consumed at Wilson's Sports Bar."

When Officer Summers asked Anderson whether he would voluntarily consent to the National Traffic Highway Safety

10  -  OPINION AND ORDER

Administration (NTHSA) Standard Field Sobriety Tests (SFST),
Anderson consented.  Anderson, however, failed numerous aspects
of the SFST; for example, he stepped out of line multiple times,
missed several heel-to-toe walking steps, and raised his arms for
balance during the Walk-and-Turn test; he placed his foot on the
ground for balance several times, only maintained his balance for
approximately three seconds, and took extra steps to maintain his
balance when placing his foot on the ground during the One-Leg
Stand test; and he swayed during both tests.

Officer Summers also asked for and received Anderson's
consent to perform the Horizontal Gaze Nystagmus (HGN) test,
which revealed Anderson's lack of smooth pursuit in each eye.

Officer Summers arrested Anderson for Driving While
under the Influence of Intoxicants (DUII) in violation of Oregon
law and transported him to the jail where Anderson was subjected
to a Breathalyzer test that revealed a .05% Blood Alcohol Content
(BAC).  Based on Officer Summers's experience, however,
Anderson's blood alcohol level was not consistent with his
performance on the field sobriety tests.

Officer Summers, therefore, requested Anderson to
complete a Drug Recognition Exam (DRE), and Oregon State Police
Senior Trooper Randy Ogle performed the DRE.  Anderson told
Trooper Ogle that he may have had three or four beers before
being pulled over, and Trooper Ogle detected a slight odor of

11  -  OPINION AND ORDER

alcohol coming from Anderson's breath during the DRE exam.

Trooper Ogle asked Anderson to perform the One-Leg Stand and Walk-and-Turn tests during the DRE exam.  Anderson stepped off the line between his fourth and fifth steps during the first series of nine steps of the Walk-and-Turn test. Anderson swayed and put his right foot down four times and his left foot down once during the One-Leg Stand test.

Although Trooper Ogle determined Anderson was not under the influence of a controlled substance, he agreed Anderson, nevertheless, exhibited signs of impairment.  Officer Summers cited Anderson for DUII.

### 2.  Fuller's Arrest.

On December 28, 2008, at approximately 2:28 a.m., Officer William Christensen "observed the Jeep drift to the right, about two feet into the right lane of northbound Baker Street."  Fuller "acknowledges that his vehicle crossed over the left and right lanes of Baker Street, without signaling, on December 28, 2008 prior to being pulled over by Officer Christensen" but contends "he crossed over the left and right lanes of Baker Street on December 28, 2008 to avoid snow and ice."[1]  Officer Christensen also observed the rear wheels of the

---

[1] Although this fact was admitted in paragraphs 63, 64, 69, and 70 of the Joint Statement of Agreed Facts (#27), at the oral argument on May 21, 2012, Fuller maintained a dispute of fact exists as to whether Fuller, in fact, crossed the center line based on the DVD labeled Exhibit 1 that Fuller provided to the

Jeep were past the stop line painted in the roadway when Fuller stopped the Jeep at an intersection.  Officer Christensen then initiated a traffic stop of the Jeep driven by Fuller.

Fuller had two passengers in his vehicle at the time he was stopped and stated he was acting as their designated driver. Christensen asked for Fuller's identification, proof of insurance, and registration.  Fuller gave Christensen his driver's license and proof of insurance, but he did not provide Officer Christensen with his vehicle registration until Christensen repeated his request.

Officer Christensen noted and Fuller acknowledges "a strong odor of alcohol coming from . . . his vehicle." Christensen also detected a "moderate odor of alcohol from Mr. Fuller's breath."  Fuller told Officer Christensen that the odor of alcohol might be from the passengers in his vehicle. Officer Christensen observed "Fuller's eyes were bloodshot." Although Fuller testified in his deposition that he does not know if his eyes were bloodshot, he denied they were bloodshot in his response to Defendants' Request for Admissions.

Officer Christensen also observed "Fuller's movements and speech [at the scene] were slow" and that he "frequently

_____

Court and that shows a view from Officer Christensen's vehicle.
The Court notes the poor quality video does not clearly support
either party's version of Fuller's driving except that it does,
in fact, show Fuller's vehicle pulling beyond the stop line
before Christensen initiated the traffic stop.

faced forward while talking with Officer Christensen."  Moreover,
Fuller admits he smoked marijuana twice on the day of the
incident before being pulled over by Officer Christensen, but
Fuller denies consuming any alcohol that day.

Officer Christensen asked Fuller to exit his vehicle
and sought and obtained Fuller's voluntary consent to the SFST.
The HGN test revealed six clues of impairment.  During the Walk-
and-Turn test, Fuller's second step in the second set of nine
steps was off the line.  When Fuller began the One-Leg Stand
test, he lifted his left foot and immediately swayed before
putting his foot down.

Officer Christensen arrested Fuller and took him into
custody for DUII.  Although Fuller refused to take the
Intoxilyzer test at the Yamhill County Jail, he was cited for
Failure to Maintain Lane, Failure to Obey Traffic Control Signal,
Refusing Breath Test, and DUII.

### C.    Analysis.

Defendants maintain the Joint Statement of Agreed Facts
establishes there was a fair probability that both Plaintiffs
committed the crime of driving under the influence of
intoxicants, and, therefore, all of Plaintiffs' claims fail.

Under Oregon law:

> [a] person commits the offense of
> driving while under the influence of
> intoxicants if the person drives a vehicle
> while the person:

14   -   OPINION AND ORDER

(a) Has 0.08 percent or more by weight
of alcohol in the blood of the person as
shown by chemical analysis of the breath
or blood of the person made under ORS
813.100, 813.140 or 813.150;

(b) Is under the influence of
intoxicating liquor, a controlled
substance or an inhalant; or

(c) Is under the influence of any
combination of intoxicating liquor, an
inhalant and a controlled substance.

Or. Rev. Stat. § 813.010(1).  A person is "under the influence"
when his physical or mental faculties are adversely affected to a
noticeable or perceptible degree by the use of intoxicating
liquor and/or a controlled substance.  *See State v. Gaylor*, 19
Or. App. 154, 164 (1974).  *See also State v. Eumana-Moranchel*,
352 Or. 1, 7-8 (2012).

> **1.  Anderson.**

At oral argument on May 21, 2012, Anderson conceded the
initial traffic stop by Deputy Meade was lawful.  Anderson,
however, contends his arrest was not lawful because it was not
supported by probable cause.  Specifically, on the basis of the
Breathalyzer test that showed Anderson had a BAC below .08% and
the DRE examination that did not reveal Anderson was under the
influence of any controlled substances, Anderson contends there
was not any probable cause to arrest or to charge him with DUII.

Defendants contend the totality of the circumstances
surrounding Anderson's arrest as set out in the Joint Statement

15  -  OPINION AND ORDER

of Agreed Facts establishes there was a fair probability that
Anderson had committed the crime of driving while under the
influence of intoxicants under Oregon law.  Defendants cite *State
v. Gilmour* in which the Oregon Court of Appeals found probable
cause for an arrest based on the following set of circumstances:

> Several of the facts are neutral, in that
> they neither validated nor refuted Bressler's
> belief that defendant was intoxicated:
> Defendant waited for 45 seconds before
> entering 3rd street, *see* n. 2, *supra*,
> declined to roll down his window further than
> 4 inches, denied that he had anything to
> drink and refused to step out of his vehicle
> when requested.  Two of the facts are
> exculpatory, in that they tended to disprove
> the existence of intoxication: Defendant's
> speech was not slurred and he had no
> difficulty producing his driver's license.
>
> Nevertheless, several facts tended to
> establish defendant's intoxication:  While
> leaving a tavern parking lot at 2 a.m.,
> defendant committed a traffic infraction and,
> during the stop that followed, the officer
> observed defendant's bloodshot, watery eyes
> and smelled a strong odor of alcohol
> emanating from the vehicle.  We hold that
> those facts, in combination, were sufficient
> to establish probable cause that defendant
> was intoxicated.

136 Or. App. 294, 299-300 (1995).

Here Deputy Meade made very similar observations about
Anderson (bloodshot eyes, slurred speech, odor of alcohol) and,
in addition, Deputy Meade witnessed Anderson's vehicle swerving
across the center line while responding to a 911 call that
reported a vehicle matching Anderson's had been swerving into

16  -  OPINION AND ORDER

oncoming traffic.  Both Deputy Meade and Officer Summers noted Anderson admitted he had recently consumed alcohol.  Officer Christensen also noted Anderson's difficulty retrieving his license.  Finally, the field sobriety tests performed on Anderson by Officer Summers revealed numerous indicia of drunkenness.

The fact that Anderson's Breathalyzer test revealed a BAC below .08% does not undermine the validity of his arrest under Oregon law, which, as noted, requires only that the driver's mental or physical faculties be impaired to a noticeable degree.  Or. Rev. Stat. § 813.010(b).  Furthermore, the results of the Breathalyzer and DRE tests were not available to the officers at the time of Anderson's arrest and, therefore, do not undermine an objective conclusion that there was a fair probability Anderson was impaired.

On these facts the Court concludes as a matter of law that there was probable cause to arrest Anderson for driving under the influence of intoxicants in violation of Oregon law. Accordingly, the Court concludes there is not any basis on which a reasonable juror might conclude Anderson's arrest was in violation of his Fourth Amendment rights.

### 2.  **Fuller**.

Fuller appears to challenge the legal basis for both his initial traffic stop and his arrest as unconstitutional under the Fourth Amendment.

17  -  OPINION AND ORDER

As noted, an officer may lawfully stop a person based on his reasonable suspicion that the person has committed a crime.  Here Fuller concedes he pulled the rear wheels of his Jeep past the stop line painted in the roadway at a red-light intersection just before Christensen initiated the stop.[2]  As noted, at oral argument Fuller's counsel attempted to point out based on the video from Officer Christensen's "in-vehicle camera" that an issue of fact existed as to whether Fuller actually swerved his vehicle over the center line despite Fuller's apparent concession in the Joint Statement of Agreed Facts that Christensen witnessed Fuller swerve over the center line in the road prior to stopping Fuller.  The view from the in-vehicle camera video footage, however, is inconclusive.  In any event, the commission of the single, undisputed traffic infraction is sufficient to constitute reasonable suspicion to stop Fuller. See Or. Rev. Stat. § 810.410(3)(b)(An officer may "stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation.").

With respect to Fuller's contention that there was not probable cause to arrest him, Defendants rely on the following

---

[2] This fact is also demonstrated by the footage from the in-vehicle camera in Officer Christensen's automobile that was provided by Plaintiffs as Exhibit 1 to the Declaration (#31) of Leonard R. Berman in support of Plaintiffs' Response to Defendants' Motion for Summary Judgment.

facts from Officer Christensen's observations to support a
probable-cause finding: Fuller swerved while driving, he stopped
beyond the intersection stop line, he required repeat
instructions to produce his registration, both he and his vehicle
smelled of alcohol, he had bloodshot eyes, his movements and
speech were slow, and he faced forward frequently while
addressing Officer Christensen.  On the basis of these
observations, Officer Christensen asked Fuller to submit to a
battery of field sobriety tests, which Fuller indisputably failed
and which led to his arrest for DUII.

        Fuller, nevertheless, contends there were not
sufficient signs of impairment to give rise to probable cause to
arrest him.  He contends Officer Christensen's observation of
Fuller as "lethargic" with "slow speech" and "bloodshot eyes" is
consistent with someone who is tired at 2:30 a.m.  Fuller also
maintains the smell of alcohol emanating from his vehicle came
from the two friends he had been called to pick up from the bar
and reiterates that Fuller told Christensen that he had not had
anything to drink.  Despite Fuller's interpretation of Officer
Christensen's  observations, a traffic infraction, bloodshot
eyes, the odor of alcohol, and lethargic movement and speech are
sufficient in combination to establish probable cause to believe
that Fuller was intoxicated, particularly in light of the hour
and the fact that Fuller admitted he had been at a bar.  *See*

19  -  OPINION AND ORDER

*Gilmour*, 136 Or. App. at 299-300.   In *Gilmour* the defendant

asserted exculpatory facts to support his position such as a lack

of slurred speech and the ability to retrieve his license without

difficulty.   *Id.*   Nevertheless,

> several facts tended to establish defendant's
> intoxication:  While leaving a tavern parking
> lot at 2 a.m., defendant committed a traffic
> infraction and, during the stop that
> followed, the officer observed defendant's
> bloodshot, watery eyes and smelled a strong
> odor of alcohol emanating from the vehicle.[FN7]
> We hold that those facts, in combination,
> were sufficient to establish probable cause
> that defendant was intoxicated.
>
>> FN7.  Defendant highlights the fact
>> that, because the odor of alcohol was
>> emanating from a vehicle that had two
>> occupants, the officer could not tell if
>> the odor was coming from defendant, his
>> passenger, or both, and, therefore, the
>> odor could not be used to establish
>> probable cause to arrest him for DUII.
>> That argument misses the point.  The
>> officer was not required to explore and
>> eliminate all possible alternative
>> explanations for the smell of alcohol in
>> defendant's vehicle in order for that
>> odor, *in combination with the other
>> relevant facts*, to give rise to probable
>> cause.  *Cf. State v. Villagran*, 294 Or.
>> 404, 413, 657 P.2d 1223 (1983)
>> (discussing "most promising place"
>> rule).

*Id.* at 300 (emphasis in original).

Based on observations similar to those of the officer

in *Gilmour*, Officer Christensen requested and received Fuller's

consent to field sobriety tests, which indisputably revealed

additional numerous indicia of intoxication.

20  -  OPINION AND ORDER

Finally, Fuller challenges Officer Christensen's authority to arrest him based on a public policy argument that supports using designated drivers to assist passengers who have been drinking. The Court notes Fuller did not cite in his briefs or at oral argument nor is the Court aware of any authority suggesting the sort of "Good Samaritan" exception that Fuller appears to be invoking. Although Fuller's assertion to Officer Christensen that he was serving as a designated driver for his passengers is an explanation as to why he was driving, Fuller's assertion does not in itself undermine Christensen's observations that supported his assessment that Fuller was "under the influence" of alcohol.

On these facts the Court concludes as a matter of law that Officer Christensen's stop of Fuller was supported by "reasonable suspicion" and that Officer Christensen also had probable cause to believe there was a "fair probability" that Fuller was driving under the influence of intoxicants. Accordingly, the Court concludes there are not any genuine issues of material fact on which a reasonable juror could conclude the stop or arrest of Fuller violated his Fourth Amendment rights.

### 3.    Qualified Immunity.

Even if Officers Summers and Christensen had violated Plaintiffs' constitutional rights, Defendants contend the officers are entitled to qualified immunity.

21  -  OPINION AND ORDER

"Generally officers performing discretionary duties have qualified immunity, which shields them 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2003)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

The Ninth Circuit set out the relevant analysis in *Skoog v. County of Clackamas*:

> Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test.  First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right?"  If the answer is no, the officer is entitled to qualified immunity.  If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted.  That is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  If the answer is no, the officer is entitled to qualified immunity.  If the answer is yes, the court must answer the final question: whether the officer could have believed, "reasonably but mistakenly ... that his or her conduct did not violate a clearly established constitutional right."  If the answer is yes, the officer is entitled to qualified immunity.  If the answer is no, he is not.

469 F.3d 1221, 1229 (9th Cir. 2006)(footnotes omitted)(citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).

22  -  OPINION AND ORDER

At step one of the analysis, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendants contend the officers are entitled to qualified immunity because they reasonably believed their conduct did not violate Plaintiffs' constitutional rights. *See Skoog* 469 F.3d at 1229. Defendants emphasize Officers Summers and Christensen are entitled to qualified immunity unless their purported violations of Plaintiffs' rights were so clear that "every reasonable official" would know such actions violate those rights.

Without much explanation, however, Plaintiffs contend the arresting officers disregarded clearly-established probable-cause requirements and, therefore, violated Plaintiffs' constitutional rights.

Because the Court has found on this record that Defendants did not violate Plaintiffs' Fourth Amendment rights, the Court concludes it is not necessary to resolve Defendants' qualified immunity defense.

**III. Plaintiffs' False-Arrest Claims**.

Plaintiffs also assert a common-law claim of false arrest against the City of McMinnville.

Under Oregon law "the tort [of false arrest] has four elements:  (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber v. Creditors Coll. Serv. Of Lincoln County, Inc.*, 154 Or. App. 408, 413 (citing *Lukas v. J.C. Penney Co.*, 233 Or. 345, 353 (1963), and *Walker v. City of Portland*, 71 Or. App. 693, 697 (1985)).  As noted, a warrantless arrest must be supported by probable cause to believe the arrestee has committed a crime.

Only the fourth element of Plaintiffs' false-arrest claim is at issue here.  Because the Court has already determined the officers had probable cause to arrest Plaintiffs and there is not any other basis on which to conclude that those arrests were otherwise unlawful, the Court concludes as a matter of law that Plaintiffs' claims for false arrest fail.

**IV.  Plaintiffs' Negligence Claims.**

Plaintiffs also bring negligence claims against the City of McMinnville exclusively based on the actions of the City's police officers in arresting Plaintiffs and on general allegations that the City failed to appropriately train and to discipline its

24  -  OPINION AND ORDER

officers.  *See* Second Am. Compl. at ¶¶ 49-56.

### A.    Standards.

A person is negligent when that person performs an act that
a reasonably careful person would not do or fails to do something
that a reasonably careful person would do under similar
circumstances.  Whether a party used reasonable care is
determined in light of the dangers apparent or reasonably
foreseeable when the events occurred rather than in light of
subsequent events.  See *Kirby v. Sonville*, 286 Or 339, 344-345
(1979).  *See also White v. Milner Hotels, Inc.,* 267 Or 628,
632-36 (1974).

### B.    Facts.

In addition to the foregoing, the following relevant facts
are taken from the parties' Joint Statement of Agreed Facts:

Plaintiffs do not have any knowledge as to the type of
training members of the McMinnville Police Department receive
related to either DUII or impaired driving, and Plaintiffs do not
have any evidence admissible at trial that the City of
McMinnville failed to administer timely and appropriate training
to any of its officers at any time within the past ten years.
Plaintiffs also do not have any evidence admissible at trial that
the City of McMinnville has failed to administer timely and
appropriate discipline or failed to discipline officers who
arrested or stopped a citizen without reasonable suspicion or

probable cause.

**C.    Analysis.**

Plaintiffs' negligence claims appear to be based both on the particular arrests of Fuller and Anderson and also on a litany of alleged general failures by the City to appropriately train and to discipline officers, to supervise and to review the actions of its officers, and to review and to investigate DUII policies and practices.  The grounds for Plaintiffs' negligence claims are not entirely clear even though the Court provided Plaintiffs with an opportunity to clarify those claims at oral argument.  Plaintiffs allege in their Second Amended Complaint that the City, through the actions and omissions of Officers Summers and Christensen, was negligent as follows:  (1) by arresting Plaintiffs without probable cause, (2) by failing to release Plaintiffs after failing to obtain BAC tests or DRE exams that demonstrated Plaintiffs were intoxicated, (3) by issuing citations to Plaintiffs for DUII without BAC or DRE results to support the citations, (4) by failing to utilize and to apply the training they received for detecting impaired drivers and for the administration of the SFST, and (5) by failing to comply with the McMinnville Police Department's General Orders.  Plaintiffs also allege the City failed to maintain the sufficient competency of their officers to perform their duties.  Plaintiffs, however, do not set out the standard of care applicable to their theories nor

do they provide any analysis of what a "reasonably careful" city would do under these circumstances that the City of McMinnville did not do.  In their Response to Defendants' Motion for Summary Judgment, Plaintiffs merely repeat their allegations from the Second Amended Complaint and do not point to any evidence that would support their claims.

As noted, the Court has already determined Officers Summers and Christensen had probable cause to arrest Plaintiffs.  To the extent that Plaintiffs contend the duration of their arrests somehow constitutes negligence on the part of the City of McMinnville, Plaintiffs have not cited any authority for such a claim nor pointed to any facts that would support such a claim. Moreover, Plaintiffs have not offered any legal basis for concluding that the charges or citations were unlawful or otherwise negligent.  As noted, for example, Defendants are not required to show that Plaintiffs had a BAC above .08% or to provide the conclusion of a DRE officer to support their charge of DUII under Oregon law.  Finally, Plaintiffs concede they do not have any evidence to support their claims of negligence based on training and discipline by the City.

Accordingly, the Court concludes there is not a genuine issue of material fact in dispute as to Plaintiffs' negligence claims and that a reasonable juror could not find in favor of Plaintiffs on this record.

**V.    Punitive Damages.**

Having already held each of Plaintiffs' foregoing claims are insufficient as a matter of law, the Court concludes there is not any basis for Plaintiffs to pursue a claim for punitive damages in this matter.

In summary, the Court concludes on this record that each of Plaintiffs' claims fail as a matter of law and, therefore, should be dismissed.


<u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#29) for Summary Judgment in its entirety and **DISMISSES** this matter **with prejudice**.  The Court **directs** Defendants to provide a proposed form of judgment **no later than August 17, 2012.**

IT IS SO ORDERED.

DATED this 20th day of July, 2012.


                                        /s/ Anna J. Brown

                                        _____
                                        ANNA J. BROWN
                                        United States District Judge


28  -  OPINION AND ORDER